IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| NICHOLAS DeFOSSETT, <br> Plaintiff <br><br> v. <br><br> CPRK-II, L.P. d/b/a BROOK <br> HOLLOW SHOPPING CENTER, <br> Defendant | § <br> § <br> § <br> § CIVIL ACTION NO. 5:21-cv-226 <br> § <br> § <br> § <br> § |

### CONSENT DECREE

This Consent Decree (this "Agreement") is made and entered into by and between NICHOLAS DeFOSSETT referred to in this Agreement as ("Plaintiff") and CPRK-II, LIMITED PARTNERSHIP ("Defendant"). The signatories to this Agreement will be referred to jointly as the "Parties." This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences, and causes of action with respect to the dispute described below.

### Preamble

**WHEREAS**, on or about March 5, 2021, Plaintiff filed an action in the United States District Court for the Western District of Texas, entitled Nicholas DeFossett v. CPRK-II, L.P. d/b/a Brook Hollow Shopping Center, Case No: 5:21-cv-226 (the "Action"), wherein Plaintiff asserted claims for injunctive relief against Defendant based upon purported violations of Title III of the Americans with Disabilities Act, 42 U.S.C. 12181, et seq. ("ADA") and related claims for relief respecting the real property located at or about the 15000 block of San Pedro Avenue, San Antonio, Texas, Bexar County Property Appraisal District Parcel IDs: 544772 and 544776 (the "Property") and the Pacific Moon Bar & Grill, located at 15140 San Pedro Avenue, San Antonio, Texas (the "Restaurant").

**WHEREAS**, without admitting the validity of, or any liability for, the claims filed and threatened by Plaintiff against Defendant, the Parties desire to compromise and fully and finally resolve and settle all actual and potential claims or litigation between them, to avoid the uncertainty, time and expense that would accompany such litigation;

**WHEREAS**, the Parties have agreed to enter into this Agreement pursuant to which each and every claim and/or cause of action asserted or that could have been asserted by Plaintiff against Defendant shall be fully, forever, and finally released; and

**NOW, THEREFORE**, in consideration of the covenants and mutual promises and agreements contained herein, and other valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

### 1. Attorney's Fees and Costs

1.1 Plaintiff and Defendant shall execute this Agreement and Plaintiff's counsel, Dennis R. Kurz, Esq., Kurz Law Group, LLC, 4355 Cobb Parkway, Suite J-285, Atlanta, GA 30339 shall prepare a Joint Stipulation of Dismissal of Claims against Defendant with Prejudice to be distributed to all Parties for execution. Defendant agrees to pay a total settlement amount of $3,100 comprising of attorney's fees and costs (the "Settlement Payment"). All payments shall be made payable to "**Kurz Law Group, LLC Trust Account**," with an indication that the check is issued "in settlement of Case No. 5:21-cv-226."

1.2 Upon delivery to Plaintiff's Counsel of the fully executed Agreement and

**EXHIBIT 1**

payment due with the executed Agreement referenced in 1.1 above, Plaintiff shall, within five days, file the Joint Stipulation of Dismissal of Claims against Defendant with Prejudice, attaching a copy of the fully executed Agreement and proposed order of dismissal with prejudice.

1.3 Plaintiff agrees to take any and all additional steps required to obtain dismissal of the Action as set forth above. Except as set forth herein, each Party shall be responsible for payment of his or its own litigation expenses, costs, and attorneys' fees.

1.4 Plaintiff and Plaintiff's Counsel acknowledge and agree to indemnify, defend, and hold harmless Defendant from any and all tax liability that might be incurred as a result of the receipt of any Settlement Payment under this Agreement. Plaintiff and Plaintiff's Counsel, and each of them, expressly acknowledge that Defendant has not made any representations regarding the tax consequences of any Settlement Payment received pursuant to this Agreement.

2. **Alterations or Modifications to the Restaurant**

2.1 In consideration of the promises and releases contained in the Agreement, Defendant shall modify or alter, or cause to be modified or altered, the items expressly identified by and in the manner specified in Exhibit "A." The repairs or modifications identified in Exhibit "A" shall be completed within 365 days of the effective date of the execution of this Agreement, which shall be the date indicated by the last signatory to the Agreement, or as close to that date as possible. The time period for completion by Defendant shall be subject to acts of God, force majeure, or events beyond the control of Defendant, such as inability to obtain building or zoning permits, failure of the city/county or state inspectors to make inspections, city/county/state work on adjacent roadways/sidewalks which delay implementation of this Agreement, contractor defaults or work stoppages. In the event of such unforeseen circumstances, the time period for completion of the alterations or modifications in Exhibit "A" shall be extended by the number of days reasonably attributable to such delay-causing event as long as Defendant provide notice to Plaintiff's Counsel prior to the original completion date set forth above. In the event there is a delay in the issuance of any required local jurisdiction approval or permit, which precludes the completion of any of the above-listed modifications by the respective deadlines, Defendant will pursue and complete the modifications required herein after receipt of all required, non-appealable approvals and permits.

2.2 It is agreed by all parties that upon all of the above modifications being completed as set forth in Exhibit "A," the Property will be fully compliant with the ADA pursuant to the readily achievable standard. Further, these alterations will fully and completely resolve all of Plaintiff's claims for injunctive relief in the Action. Plaintiff further agrees that nothing herein prevents the use of designs, products, or technologies to those referred to, provided they result in substantially equivalent or greater accessibility and usability. Plaintiff further agrees that this Agreement and the above remediation efforts apply only to those areas of the Property available for use by the public during business hours. Plaintiff also agrees that the means and methods of construction to be used to make the modifications described in this Agreement shall be within the sole discretion of and under the sole control of Defendant. In addition, Plaintiff expressly waives any and all claims, whether stated or not, for any further alterations to the Property that could have been brought prior to the Effective Date of this Agreement.

2.3 It is agreed by all parties that the modifications to the Property that are expressed in Exhibit "B" are not readily achievable, as such is defined in 42 U.S.C. § 12181(9) and as interpreted and applied in common law. The parties agree to request that the Court enter findings of facts and law that the renovations and modifications in Exhibit "B" are not readily achievable.

3. **Alterations or Modifications to the Property**

3.1 It is agreed that the parking lot and walkway areas of the Property were the subject of a similar lawsuit in 2009, that was dismissed in 2011, being Cause No. 5:09-cv-1017-XR, *James Lawson v. CPRK-II, Limited Partnership*, in the Western District of Texas, San Antonio Division (the "2009 Lawsuit").

3.2 The Settlement Agreement in the 2009 Lawsuit required the property owner Defendant, being the same property owner Defendant as in the present case, to make

EXHIBIT 1

certain modifications to the Property. It is agreed that Defendant complied with the terms of that Settlement Agreement and that, as such, the parking lot and walkway areas of the Property are deemed to comply with the ADA.

### 4. Compromise

4.1 The Parties agree and acknowledge that this Agreement is the result of a compromise and shall never be construed as an admission of any liability, wrongdoing, or responsibility on the part of the Released Parties (as defined in Section 5.1 below). The Released Parties expressly deny any such liability, wrongdoing, or responsibility.

### 5. Plaintiff's Release as to Defendant and the Released Parties

5.1 In exchange for the good and valuable consideration set forth herein the sufficiency of which is hereby acknowledged, Plaintiff, for and on behalf of himself and his heirs, beneficiaries, executors, administrators, successors, agents, and assigns, , along with anyone claiming by or through them, (collectively the "Releasing Parties") hereby forever releases, acquits, satisfies and discharges Defendant, and along with any and all of their predecessors, agents, employees, assigns, heirs, officers, directors, shareholders, members, landlords, property owners, licensees, franchisees, affiliated entities, or the present, future, or former employees, attorneys, agents, shareholders, or successors of these entities, as well as any other persons, firms, insurance companies and reinsurance companies, third-party administrators, or other insurance companies or entities, known or unknown, liable or who might be claimed to be liable and any entity or person related to them, jointly and severally, (hereinafter the "Released Parties") from any and all potential or actual claims, demands, liabilities, debts, judgments, damages, expenses, actions, causes of action or suits of any kind which the Releasing Parties may have, may have had, or may hereafter raise against the Released Parties, including but not limited to this subject litigation arising under Title III of the ADA, or any claim or right under the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq., the Texas Human Resources Code, Tex. Hum. Res. Code § 121.001 et seq., the Texas Architectural Barriers Act, Tex. Gov't Code § 469.001 et seq., and the Texas Accessibility Standards, 37 Tex. Reg. 677; 16 Tex. Admin. Code § 68.100, or any other provision of federal, Texas, or local statutory or common law (including, whistleblower claims, claims for personal injury, intentional or negligent infliction of emotional distress and/or mental anguish, negligence, or the like), or regulation, including all claims by the Releasing Parties for attorneys' fees and costs, expert fees, litigation expenses, or any other amount, fee, and/or cost, with the exception of the attorneys' fees and costs required to be paid by the Defendant pursuant to Paragraph 1 of this Agreement. Excluded from this Agreement are any claims which cannot be waived by law.

5.2 As a material inducement for Defendant to enter into this Agreement, Plaintiff represents and warrants that he is not aware of any pending tort, contract, or other legal claims against Defendant, other than the specific claims brought in this Action under Title III of the ADA, which are released under this Agreement.

5.3 Plaintiff represents and warrants that no portion of any of the matters released by this Agreement and no portion of any recovery or settlement to which he might be entitled has been assigned or transferred to any other person, firm, or corporation not a Party to this Agreement, in any manner, including by way of subrogation or operation of law or otherwise.

5.4 Plaintiff and his counsel represent and warrant that no Medicare payments have been made to or on behalf of Plaintiff and that no liens, claims, demands, subrogated interests, or causes of action of any nature or character exist or have been asserted by any individual, entity, government agency, insurance company, physician, hospital, ambulance service, or other medical provider, arising from or relating to this Agreement, the payment of the Settlement Payment, or any medical expense or payments arising from or related to any alleged accident, occurrence, injury, illness, disease, loss, claim, demand, or damages that are subject to this Agreement or the release set forth herein. Plaintiff and his counsel further agree that Plaintiff and not Defendant, shall be responsible for satisfying all such liens, claims, demands, subrogated interests, or causes of action that may exist or have been asserted or that may in the future exist or be asserted.

5.5 Plaintiff agrees to indemnify and hold harmless Defendant from any and all

EXHIBIT 1

claims, demands, liens, subrogated interests, and causes of action of any nature or character that have been or may in the future be asserted by Medicare and/or persons or entities acting on behalf of Medicare, or any other person or entity arising from or related to this Agreement, the payment of the Settlement Payment, any Conditional Payments made by Medicare, or any other medical expenses or payments arising from or related to any alleged accident, occurrence, injury, illness, disease, loss, claim, demand, or damages that are subject to this Agreement or the release set forth herein, including but not limited to: (a) all claims and demands for reimbursement of Conditional Payments or for damages or double damages based upon any failure to reimburse Medicare for Conditional Payments; (b) all claims and demands for penalties based upon any failure to report, late reporting, or other noncompliance with or violation of MMSEA Section 111 that is based in whole or in part upon late, inaccurate, or inadequate information provided to Defendant by Plaintiff or upon any failure of Plaintiff to provide information; and (c) all Medicaid liens. This indemnification obligation includes all damages, double damages, fines, penalties, attorneys' fees, costs, interest, expenses, and judgments incurred by or on behalf of Defendant in connection with such claims, demands, subrogated interests, or causes of action.

6. **Notice**

6.1 Unless otherwise provided in this Agreement or by law, all notices or other communications required or permitted by this Agreement or by law to be served on or delivered to any Party to this Agreement shall be delivered as follows:

> To Defendant:
> CPRK-II, LIMITED PARTNERSHIP
> c/o Michael D. DeNuccio, Esq.
> Curney, Farmer, House Osuna & Jackson, PC
> 411 Heimer Road
> San Antonio, Texas 78232
> mdenuccio@cfholaw.com

> To Plaintiff:
> **NICHOLAS DeFOSSETT**
> Dennis R. Kurz, Esq.
> Kurz Law Group, LLC
> 4355 Cobb Parkway, Suite J-285
> Atlanta, GA 30339
> dennis@kurzlawgroup.com

6.2 A Party may change such address for the purpose of this paragraph by giving timely written notice of such change to all other Parties to this Agreement in the manner provided in this paragraph.

7. **Warranties**

7.1 Plaintiff represents and warrants to Defendant that he understands that if the facts upon which this Agreement are found hereafter to be different from the facts now believed to be true, this Agreement will remain binding and effective and the Parties expressly accept and assume the risk of such possible differences and agree that this Agreement shall remain binding and effective, notwithstanding such potential differences, no matter how significant.

7.2 Plaintiff acknowledges that he has entered into this Agreement freely, knowingly, and voluntarily; it is further understood and agreed that this Agreement was reached and agreed to by the parties in order to avoid the expense of continued litigation. Plaintiff understands and acknowledges that he has expressly waived all of his rights in relation to the Action by executing this Agreement. Plaintiff further acknowledges that he understands the legal effect of this Agreement, that he has consulted with his attorneys regarding the legal effect of this Agreement prior to executing it, and that he executed this Agreement only after having a complete understanding of the legal effect of executing it.

7.3 Plaintiff also agrees and promises not to voluntarily participate in any ongoing and/or future investigation or civil case that could or might be brought by any

EXHIBIT 1

governmental entity or private party against Defendant relating to the Property. Plaintiff also agrees that he will not cause, encourage, or participate in any civil proceedings maintained or instituted against Defendant, or in any ongoing and/or future civil litigation, with respect to matters or incidents which were, or could have been, alleged against Defendant prior to the Effective Date of this Agreement. Plaintiff also agrees and promises that he will not testify or provide any information with respect to any matters with respect to the Property or the Action, including but not limited to, any civil or administrative proceedings which may or could be maintained or instituted against Defendant, although Plaintiff may testify and give any information otherwise precluded by this paragraph if such testimony or information is required by a court order or pursuant to a lawful subpoena.

### 8. Confidentiality

8.1 Plaintiff expressly represents, covenants and warrants that it is understood and agreed that, as a material condition of this Agreement and exchange of consideration hereunder, the allegations of inappropriate conduct alleged by Plaintiff, as well as the terms and conditions of this Agreement, are to remain strictly confidential. Plaintiff, individually and on behalf of his agents, attorneys, and representatives, agrees and promises to keep the allegations underlying the claims and the terms and conditions of this Agreement and the exchange of consideration hereunder strictly confidential to the extent permitted by law, and further agrees and promises that he will not disclose or consent to disclosure by others, discuss, or otherwise disseminate that information or the manner in which these claims have been resolved to anyone in any way, unless specifically required by law to do so. Plaintiff also represents and warrants that it is understood and agreed that if he receives any third party inquiries about the terms and conditions of this Agreement, that he may only make a statement to the effect that the dispute between Plaintiff and Defendant has been resolved amicably, and to the satisfaction of all parties, but without revealing in any way the allegations of inappropriate conduct directed at Defendant or the terms or substance of any part of this Agreement. Plaintiff agrees that this provision will not prevent him from disclosing the terms and conditions of this Agreement to his attorneys, accountants, or tax advisors, but then only on a need-to-know basis. However, to the extent Plaintiff might disclose this information to these limited categories of individuals, he agrees to advise any such individuals of the strict confidentiality provision and that the confidentiality provision pertains to all persons that have knowledge of or are informed about the terms and conditions of this Agreement as set forth in this paragraph.

### 9. Free Will

9.1 The Parties acknowledge that each has had an opportunity to consult with counsel of their own choosing concerning the meaning, import, and legal significance of this Agreement, and that each has done so to the extent desired. In addition, the Parties acknowledge that they each have read this Agreement, as signified by their signatures hereto, and are voluntarily executing the same after having had the opportunity to seek the advice of counsel for the purposes and consideration herein expressed.

### 10. Miscellaneous Terms and Conditions

10.1 This Agreement contains the complete settlement agreement between the Parties. Any and all prior agreements, representations, negotiations, and understandings between the Parties, oral or written, express or implied, with respect to the subject matter hereof are hereby superseded and merged herein.

10.2 This Agreement may be executed in counterparts or by copies transmitted by facsimile or email, all of which shall be given the same force and effect as the original.

10.3 This Agreement may be modified only by a written document signed by all of the Parties. No waiver of this Agreement or of any of the promises, obligations, terms, or conditions hereof shall be valid unless it is written and signed by the Party against whom the waiver is to be enforced.

10.4 This Agreement shall be binding upon the Parties hereto, their predecessors, successors, parents, subsidiaries, affiliates, assigns, agents, directors, attorneys, officers, families, heirs, spouses, and employees.

**EXHIBIT 1**

10.5 If any provision of this Agreement shall be finally determined to be invalid or unenforceable under applicable law by a court of competent jurisdiction, that part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of said provision or the remaining provisions of this Agreement.

10.6 The Parties acknowledge that they have reviewed this Agreement in its entirety and have had a full opportunity to negotiate its terms, and therefore waive all applicable rules of construction that any provision of this Agreement should be construed against its drafter and agree that all provisions of the Agreement shall be construed as a whole, according to the fair meaning of the language used.

10.7 Plaintiff represents that, other than the Action, he has not filed or authorized the filing of any complaints, charges, or lawsuits against Defendant with any federal, state, or local court, governmental agency, or administrative agency relating to the subject Property, and that if, unbeknownst to Plaintiff, such a complaint, charge, or lawsuit has been filed on his behalf, he or it will use his or its best efforts to cause it immediately to be withdrawn and dismissed with prejudice.

10.8 The parties and their Counsel agree to execute any and all further documents and perform any and all further acts reasonably necessary or useful in carrying out the provisions and purposes of this Agreement.

10.9 In any action or other proceeding to enforce rights under this Agreement, the prevailing Party shall recover from the losing party all attorneys' fees, litigation expenses, and costs.

10.10 The Parties agree that any ambiguities in this Agreement shall not be construed against the drafter of the Agreement.

10.11 The Parties acknowledge that all Recitals and/or "WHEREAS" clauses preceding paragraph 1 are incorporated as a material part of this Agreement.

10.12 This Agreement is entered into in, and shall be governed by and construed and interpreted in accordance with the substantive laws of the State of Texas.

10.13 This Agreement shall be interpreted and governed according to the laws of the State of Texas.

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

DATED: _May 24_, 2021

NICHOLAS DeFOSSETT    _/s/ Nicholas DeFossett_

DATED: _MAY 18_, 2021

CPRK-II, LIMITED PARTNERSHIP
WP- Brookhollow, Inc
General Partner

_/s/ Thomas K. Wasp_

Name: Thomas K. Wasp

Title: President

**EXHIBIT 1**

For purposes of this Agreement, "2010 ADAAG standards" refers to the ADA Accessibility Guidelines 28 C.F.R. Pt. 36, App. A.

**The following modifications are to be made by Pacific Moon Bar & Grill:**

**RESTROOMS**

a. The restroom shall be modified to include signage in compliance with sections 216.8 and 703.4.1 of the 2010 ADAAG standards.

b. The restroom door shall be modified to comply with sections 404.2.4 and 404.2.7 of the 2010 ADAAG standards.

c. The restroom grab bar to the side of the commode shall be modified to comply with section 604.5 of the 2010 ADAAG standards. It is noted that the rear grab bar complies with the ADAAG standards as it is subject to Exception 1 of section 604.5.2.

d. The commode shall be modified to comply with Section 604.6 of the 2010 ADAAG standards.

e. The lavatories and/or sinks in the restrooms with exposed pipes and surfaces which are not insulated or configured to protect against contact shall be appropriately modified to be brought into compliance with sections 306.2, 306.3, and 606.5 of the 2010 ADAAG standards.

f. The mirror in the bathrooms shall be modified to fall within the maximum height permitted by section 603.3 of the 2010 ADAAG standards.

## EXHIBIT B

**The Parties stipulate that renovations that would be necessary and required to meet the minimum requirements of the Americans with Disabilities Act, 2010 ADAAG Standards, regarding the following are not readily achievable, as such is defined in 42 U.S.C. § 12181(9) and as interpreted and applied in common law.**

a. Modifications to the bar to comply with section 902.3 of the 2010 ADAAG standards are not readily achievable.

- As a reasonable and readily achievable accommodation, a sign shall be posted in a visible area stating "Assistance Available" and containing the International Symbol of Accessibility.

b. Modifications to the raised seating area/administrative storage area to comply with section 206.2.4 of the 2010 ADAAG standards are not readily achievable.

1

EXHIBIT 1